UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANDRY DANIELS, | No.  2:18-cv-2409 MCE KJN P |
| Petitioner, | |
| v. | FINDINGS & RECOMMENDATIONS |
| ROBERT W. FOX, Warden, | |
| Respondent. | |

I.  Introduction

Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 2013 conviction for obstructing or resisting an executive officer, with threats or violence, in the performance of duties (Cal. Pen. Code, § 69 [two counts]).  Petitioner was sentenced to a total of twenty-seven years in state prison.  More particularly, petitioner asserts three claims: (1)  without considering less severe measures, the trial court violated the Fifth, Sixth and Fourteenth Amendments by forcing petitioner to choose between the right to be present at trial and his right to testify; (2) the trial court abused its discretion in denying petitioner's fourth Marsden[1] motion because an irreconcilable conflict regarding the exercise of a fundamental right compromises the right to

_____

[1] People v. Marsden, 2 Cal.3d 118 (1970).

1

1   effective representation; and (3) the trial court violated petitioner's due process rights by not

2   ordering a competency hearing where there was substantial evidence that petitioner was unable to

3   rationally assist defense counsel.  (ECF No. 1.)[2]

4   II.  Procedural History

5          Petitioner was charged with two counts of obstructing or resisting an executive officer,

6   with threats or violence, in the performance of duties (Cal. Pen. Code,[3] § 69); it was further

7   alleged that petitioner had previously been convicted of serious or violent felonies in 1987 and

8   2008 and had served prior prison terms.  (§§ 667(d)&(e)(2), 667.5(b)&(c), 1192.7(c)).  (LD 1 at

9   52-55; see also LD 1 at 102-07, 111-16.)  Following a jury trial in August 2013, when the jury

10  indicated it was unable to reach verdicts, a mistrial was declared.  (LD 1 at 178, 180-81.)

11  Thereafter, following a second trial held in October 2013, the jury found petitioner guilty of both

12  counts.  (LD 1 at 220, 223-24, 243-45.)  In a bifurcated proceeding, the trial court found the prior

13  enhancements alleged against petitioner to be true.  (LD 1 at 221-22.)  On November 14, 2013,

14  petitioner was sentenced to an indeterminate term of twenty-five years to life, and an additional

15  determinate two-year term, in state prison.  (LD 2 at 24-25, 47-48.)

16         Petitioner appealed the conviction to the California Court of Appeal, Third Appellate

17  District.  (LD 13 & 15.)  The Court of Appeal affirmed the conviction in its entirety.  (LD 16.)

18         Thereafter, petitioner filed a petition for review in the California Supreme Court, which

19  was denied on May 9, 2018.  (LD 17-18.)

20         Petitioner filed the instant petition on August 7, 2018, in the United States District Court

21  for the Northern District of California.  (ECF No. 1.)  The case was transferred to this court on

22  August 28, 2018.  (ECF No. 5.)

23         Respondent filed an answer to the petition on January 23, 2019.  (ECF No. 20.)

24  //

25  [2] "ECF" followed by a numbered entry corresponds with the court's electronic docket or case

26  filing system.  "LD" refers to the documents lodged by respondent on January 24, 2019.  All
    specific page number references are to the numbers assigned by the CM/ECF system.

27  [3] All further statutory references are to the California Penal Code unless otherwise indicated.

28

III.  Facts

In its unpublished memorandum and opinion affirming petitioner's judgment of

conviction on appeal, the California Court of Appeal for the Third Appellate District provided the

following factual summary:

> On May 17, 2013, defendant, in custody on an unrelated case, refused
> to cooperate in getting ready to go to court, first ignoring officers and
> staying in his bunk and then pulling and kicking at the officers when
> they began to remove him from his cell. As a result of this resistance,
> he was transported in a T-shirt and boxer underwear.
>
> At the courthouse, defendant was placed in a holding cell so that he
> could change into a jumpsuit for his court appearance. He complied
> when ordered to face the wall and his leg shackles were removed.
> But, after one hand was freed from the handcuffs, defendant raised
> his arm aggressively, shouted, "motherfuckers," and turned to face
> Deputy Garcia, cocking his arm like he was going to punch Garcia.
> Garcia grabbed defendant's T-shirt, which tore as defendant lunged
> at Garcia. Simultaneously, Deputy Torres tried to restrain defendant
> by placing his arm around defendant's neck and pulling him to the
> ground. Defendant continued to kick violently, and Garcia tried to
> hold defendant's legs down. A third deputy came into the cell and
> successfully restrained defendant's legs. Defendant then said he was
> "done fighting."
>
> As a result of the fight, Torres had a bleeding four-inch cut on his left
> forearm and an inch and a half puncture wound at the end of that cut.
> Torres could not say how he was injured. He was left with a
> permanent scar on his forearm.

(People v. Daniels, 2018 WL 1163043 at *1 (Mar. 6, 2018); see also LD 16.)

IV.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a

state court can be granted only for violations of the Constitution or laws of the United States.  28

U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502

U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

corpus relief:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State

3

court proceedings unless the adjudication of the claim -

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably."  Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced."  Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct.  Id.  Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue.  Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003).  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. [4]  Lockyer v.

---

[4]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be

4

1 | Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d
2 | 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply
3 | because that court concludes in its independent judgment that the relevant state-court decision
4 | applied clearly established federal law erroneously or incorrectly.  Rather, that application must
5 | also be unreasonable."  Williams v. Taylor, 529 U.S. at 411.  See also Schriro v. Landrigan, 550
6 | U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its
7 | 'independent review of the legal question,' is left with a "'firm conviction'" that the state court
8 | was "'erroneous'"").  "A state court's determination that a claim lacks merit precludes federal
9 | habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's
10 | decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541
11 | U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal
12 | court, a state prisoner must show that the state court's ruling on the claim being presented in
13 | federal court was so lacking in justification that there was an error well understood and
14 | comprehended in existing law beyond any possibility for fair-minded disagreement."  Richter,
15 | 562 U.S. at 103.

16 |   If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing
17 | court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford,
18 | 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)
19 | (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of
20 | § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by
21 | considering de novo the constitutional issues raised.").

22 |   The court looks to the last reasoned state court decision as the basis for the state court
23 | judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).
24 | If the last reasoned state court decision adopts or substantially incorporates the reasoning from a
25 | previous state court decision, this court may consider both decisions to ascertain the reasoning of

26 |

27 | overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
presented in the state court proceeding."  Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,
28 | 384 F.3d 628, 638 (9th Cir. 2004)).

1   the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

2   federal claim has been presented to a state court and the state court has denied relief, it may be

3   presumed that the state court adjudicated the claim on the merits in the absence of any indication

4   or state-law procedural principles to the contrary."  Richter, 562 U.S. at 99.  This presumption

5   may be overcome by a showing "there is reason to think some other explanation for the state

6   court's decision is more likely."  Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803

7   (1991)).  Similarly, when a state court decision on petitioner's claims rejects some claims but

8   does not expressly address a federal claim, a federal habeas court must presume, subject to

9   rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, 568 U.S. 289,

10  298 (2013) (citing Richter, 562 U.S. at 98.  If a state court fails to adjudicate a component of the

11  petitioner's federal claim, the component is reviewed de novo in federal court.  Wiggins v. Smith,

12  539 U.S. 510, 534 (2003).

13       Where the state court reaches a decision on the merits but provides no reasoning to

14  support its conclusion, a federal habeas court independently reviews the record to determine

15  whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v.

16  Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

17  review of the constitutional issue, but rather, the only method by which we can determine whether

18  a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no

19  reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

20  reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.

21       A summary denial is presumed to be a denial on the merits of the petitioner's claims.

22  Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012).  While the federal court cannot analyze

23  just what the state court did when it issued a summary denial, the federal court must review the

24  state court record to determine whether there was any "reasonable basis for the state court to deny

25  relief."  Richter, 562 U.S. at 98.  This court "must determine what arguments or theories . . . could

26  have supported the state court's decision; and then it must ask whether it is possible fairminded

27  jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

28  decision of [the Supreme] Court."  Id. at 101.  The petitioner bears "the burden to demonstrate

1    that 'there was no reasonable basis for the state court to deny relief.'"  Walker v. Martel, 709 F.3d

2    925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

3         When it is clear, however, that a state court has not reached the merits of a petitioner's

4    claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

5    habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462

6    F.3d 1099, 1109 (9th Cir. 2006).

7    V.  Petitioner's Claims

8         *The Choice Between the Right to be Present at Trial and the Right to Testify*

9         Petitioner claims that without considering less severe measures, the trial court violated the

10   Fifth, Sixth and Fourteenth Amendments by forcing petitioner to choose between the right to be

11   present at trial and his right to testify.  (ECF No. 1 at 4, 14-23.)  Respondent maintains that the

12   state court's determination was reasonable, thus precluding relief in this court.  (ECF No. 20 at

13   11-13.)

14        The last reasoned rejection of petitioner's claim is the decision of the California Court of

15   Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed

16   this claim as follows:

17             **The Court Did Not Force Defendant to Forego His Constitutional**
                                      **Rights**
18

19        Defendant argues that the trial court violated the Fifth, Sixth, and
         Fourteenth Amendments to the United States Constitution by forcing
20       defendant to choose between his right to be present at trial and his
         right to testify.

21
         A review of the record demonstrates the trial court did not force
22       defendant to choose between constitutional rights; it merely required
         him to answer the trial court's question of whether he wished to
23       testify on his own behalf when, during trial, he made a request to
         leave the courtroom for the balance of the trial.

24
         Midway through the People's case in chief and after a *Marsden*
25       hearing wherein the court refused defendant's request for new
         counsel, defendant requested to be absent for the remainder of his
26       trial. The trial court granted that request.

27       Before defendant left the courtroom, his attorney noted they were
         nearing time for the defense case in chief, and in response, the trial
28       court asked defendant whether he wished to testify. The following

                                      7

exchange between the defendant and the court then took place:

"THE DEFENDANT: Thank you, your Honor. I will be at the holding—I'll be at the jail.

"THE COURT: So you are giving up your right to testify?

"THE DEFENDANT: Thank you, your Honor. I'll be at the jail.

"THE COURT: You're going to have to answer my question.

"THE DEFENDANT: Your Honor, I said I'll be at the jail waiting for whatever decision's [sic ] made after this Court's finished doing—

"THE COURT: If you don't want to waive your right to testify—

"THE DEFENDANT: Your Honor—

"THE COURT: Sir, Sir—

"THE DEFENDANT: Your Honor, your Honor, your Honor, your Honor, your Honor.

"THE COURT: Would you like to be in court with a gag? I can accommodate that if you want to act this way.

"THE DEFENDANT: Like I said—

"THE COURT: Do you give up your right to testify?

"THE DEFENDANT: You can send me back now.

"THE COURT: I'm not sending you back until you answer my question.

"THE DEFENDANT: What did I say the first time?

"THE COURT: I didn't understand what you said because you've been saying a lot of things. I want to make sure the record is clear. If you're—

"*THE DEFENDANT: The record was clear the first time. I said you could send me back. Yes, I waive my right. Is there a problem with your hearing?*

"*THE COURT: You waive your right to testify as well as your right to be present; is that correct?*

"*THE DEFENDANT: That's correct.*

"*THE COURT: I'm not sending you back until you answer me.*

"*THE DEFENDANT: I said that's correct.*" (Italics added.)

As can plainly be seen from this exchange between defendant and

8

the court, defendant was not required to choose between testifying and absenting himself from the trial proceedings. The court did not say or imply that defendant could only testify if he stayed in the courtroom for the other proceedings or that if he left the courtroom he could not return and testify on his own behalf. Defendant made a request to leave the courtroom but before he left he was asked if he wanted to testify which right he, eventually, waived. We have no doubt that the trial court, had defendant refused to waive his right to testify, would have allowed him to return to the courtroom to do so or would have allowed him to return to the courtroom whenever, if ever, he wished to do so.

Defendant's authorities are inapposite, including *Simmons v. United States* (1968) 390 U.S. 377 [19 L.Ed.2d 1247] [defendant's testimony in support of fourth amendment motion cannot be used against defendant in violation of the fifth amendment right against self-incrimination] and *People v. Collins* (2001) 26 Cal.4th 297 [impermissible offer of unspecified benefit if defendant waived a jury trial] are inapposite.

There was no error.

(People v. Daniels, 2018 WL 1163043 at *2-3; LD 16.)

<u>Applicable Legal Standards</u>

"[I]t cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." Rock v. Arkansas, 483 U.S. 44, 49 (1987). "The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution. It is one of the rights that 'are essential to due process of law in a fair adversary process.'" Id. at 51 (quoting Faretta v. California, 422 U.S. 806, 819, n. 15 (1975)). "The necessary ingredients of the Fourteenth Amendment's guarantee that no one shall be deprived of liberty without due process of law include a right to be heard and to offer testimony...." Id. (citing In re Oliver, 333 U.S. 257, 273 (1948), and Ferguson v. Georgia, 365 U.S. 570, 602 (1961) (Clark, J., concurring) (noting that the Fourteenth Amendment secures the "right of a criminal defendant to choose between silence and testifying in his own behalf")). And, "[o]ne of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." Illinois v. Allen, 397 U.S. 337, 338 (1970).

In Simmons v. United States, 390 U.S. 377 (1968), Simmons challenged the constitutionality of the trial court's admission of his motion-to-suppress testimony on the issue of his guilt. Id. at 389. The Court held that "when a defendant testifies in support of a motion to

9

1  suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted

2  against him at trial on the issue of guilt unless he makes no objection." Id. at 394.  The Court

3  reasoned that, given the defendant's situation, the defendant "was obliged either to give up what

4  he believed, with the advice of counsel, to be a valid Fourth Amendment claim or, in legal effect,

5  to waive his Fifth Amendment privilege against self-incrimination." Id.  The Court noted that

6  "[i]n these circumstances, we find it intolerable that one constitutional right should have to be

7  surrendered in order to assert another." Id.

8  <u>Analysis</u>

9  The undersigned has carefully reviewed the relevant record as it pertains to this claim.

10  On October 8, 2013, following a discussion concerning jury instructions held outside the

11  jury's presence, the trial court inquired of counsel whether there were any issues other than

12  petitioner's <u>Marsden</u> motion that counsel wished to bring to the court's attention; there were not.

13  (LD 5 at 187.)  The court then asked to clear the courtroom of persons other than petitioner,

14  petitioner's counsel and court staff.  (LD 5 at 187.)  Thereafter, the trial court considered

15  petitioner's latest <u>Marsden</u> motion in a confidential proceeding.  (LD 12 at 2-9.)  After the trial

16  court explained its reasons for denying petitioner's motion to substitute counsel (LD 12 at 9),

17  petitioner stated the following:

18
19  DEFENDANT: Well, your Honor, if that's the case, you know, I'm - - I'm - - I'm told that - - more than once that I do not have to sit up and accept Mr. Muller as my attorney.  I've been told more than once that if we have issues, more than once, that - - me and Mr. Muller have had issues in the past, and not just in the past, but in the present as well, and Mr. Muller is, like I said, representing me on three cases.

20
21
22  And being that he is representing me on three different cases - - I feel that it's uncomfortable for him to represent me on all three cases. And for him to take all three cases and to run them how he feels instead of with any input from me, I don't feel comfortable with that.

23
24  So with that being said, if he's going to - - if you're going to continue, continue to deny me a new counsel, I don't want to accept new counsel. So I'm going to have to waive my appearance as like you said yesterday and let things happen the way they should, or with you and Mr. Muller dealing with this situation, since you seem more fit to examine Mr. Muller's opinion on how he feels he wants to do things and respect his wishes or his pleasure as you so desire.

25
26
27
28  So you can send me back to the county holding facility and I'll just

10

1      sit back there and wait.

2      THE COURT:  So you wish to give up the right to be present at the rest of your trial? Is that what you're saying?

3

4      THE DEFENDANT: With Mr. Muller as my attorney, yes, your Honor.

5      THE COURT:  All right.  If you - -

6      THE DEFENDANT:  With Mr. Muller as my attorney. Thank you.

7      THE COURT:  Well, you have a right to be present for your trial.  I understand your request is saying you don't want to be here since Mr. Muller is still your lawyer, and I'll respect that wish as long as that's what you want.

8

9      THE DEFENDANT:  Thank you, your Honor.

10     THE COURT: All right.  Take him back to the holding cell.

11

12     MR. MULLER: There is one other issue, your Honor, though.  If Mr. Daniels is going to be absent from these proceedings, as soon as the district attorney finishes, then it will be an opportunity for the defense to put on its case as it so chooses.

13

14     THE COURT: That's a good point.  Mr. Muller - -  excuse me - - Mr. Daniels, do you wish to testify in this case or do you wish to give up your right to testify?

15

16     THE DEFENDANT:  No, I don't give up my right to testify, your Honor, but it seems that Mr. Muller is refusing to accommodate me on some of my wishes that I'm trying to establish a line of communication right now.  So it doesn't matter what I want. Mr. Muller is going to do what he wants. So we have an issue with that right here.

17

18

19

20     THE COURT:  You have an absolute right to testify, if you wish. That's one tactical decision your attorney cannot make. And if you want to testify, you get to testify even if your attorney doesn't think it's a good idea.

21

22     THE DEFENDANT:  All right. Thank you.

23     THE COURT:  Similarly, even if you don't want to testify, no one can force you to testify.

24

25     THE DEFENDANT: Thank you, your Honor.  I will be at the holding - - I'll be at the jail.

26     THE COURT:  You're going to have to answer my question.

27     THE DEFENDANT: Your Honor, I said I'd be at the jail waiting for whatever decision's made after this Court's finished doing - -

28

11

1    THE COURT:  If you don't want to waive your right to testify - -

2    THE DEFENDANT: Your Honor - -

3    THE COURT:  Sir, sir - -

4    THE DEFENDANT:  Your Honor, your Honor, your Honor, your Honor, your Honor.

5

6    THE COURT:  Would you like to be in court with a gag?  I can accommodate that if you want to act this way.

7    THE DEFENDANT:  Like I said - -

8    THE COURT:  Do you give up your right to testify?

9    THE DEFENDANT:  You can send me back now.

10   THE COURT:  I'm not sending you back until you answer my question.

11

12   THE DEFENDANT:  What did I say the first time?

13   THE COURT:  I didn't understand what you said because you've been saying a lot of things.  I want to make sure the record is clear.  If you're - -

14

15   THE DEFENDANT:  The record was clear the first time.  I said you could send me back.  Yes, I waive my right.  Is there a problem with your hearing?

16

17   THE COURT:  You waive your right to testify as well as your right to be present; is that correct?

18   THE DEFENDANT:  That's correct.

19   THE COURT:  I'm not sending you back until you answer me.

20   THE DEFENDANT:  I said that's correct.

21   THE COURT:  Thank you.  Was that hard?

22   THE DEFENDANT: I think it was harder for you than for me, so. . .

23   THE COURT:  I have to be concerned that the court reporter takes down a clean record, and when you are disruptive as you are, it's difficult to have a clear record.  I'm sorry if I put you out.

24

25   THE DEFENDANT: Well, it's more difficult when you're being the way you are, trying not to accommodate me instead of trying to push your opinion in different ways.  So thank you.  Have a nice day.

26

27   MR. MULLER:  I think we need another jury instruction.

28   THE COURT:  Well, I would  - - let's bring in [the prosecutor].

12

1  (LD 12 at 9-12.)  Once the confidential hearing concluded and the trial court confirmed it had

2  accommodated petitioner's request not to be present (LD 5 at 189), the parties agreed upon

3  language regarding an admonishment to the jury concerning petitioner's absence and the

4  proceedings resumed (LD 5 at 189).

5      Given this record, the undersigned finds the state appellate court's determination that

6  petitioner was not forced to choose between his right to be present (or absent from, as was the

7  case here) at trial and his right to testify at trial to be reasonable.  Further, the state appellate

8  court's determination of the facts was reasonable.  28 U.S.C. § 2254(d).

9      Petitioner was not forced to choose between two constitutional rights.  Rather, the record

10  reveals petitioner chose to absent himself from the trial proceedings, responding to the trial

11  court's denial of his request to substitute counsel, and that the trial court only sought to ensure

12  petitioner understood his absolute right to testify before obtaining petitioner's response to its

13  repeated inquiry as to whether petitioner was choosing to waive that right.

14      In any event, "'fairminded jurists could disagree' on the correctness of the state court's

15  decision." Harrington v. Richter, 562 U.S. at 101.  Petitioner has failed to show that the state

16  court's determination "was so lacking in justification that there was an error well understood and

17  comprehended in existing law beyond any possibility for fair-minded disagreement." Richter,

18  562 U.S. at 103.

19      In sum, the state appellate court's determination was neither contrary to, nor an

20  unreasonable application of, federal precedent, nor did it involve an unreasonable determination

21  of the facts.  28 U.S.C. § 2254(d).  Therefore, the undersigned recommends petitioner's claim as

22  expressed in ground one of his petition be denied.

23      *The Trial Court's Denial of Petitioner's Fourth Marsden Motion*

24      In ground two of his petition, petitioner contends the trial court abused its discretion in

25  denying his fourth Marsden motion, citing an irreconcilable conflict due to a breakdown in

26  communication, hostility, and a lack of trust, leading to a conflict compromising petitioner's right

27  to be present at trial and right to testify.  (ECF No. 1 at 4, 23-36.)  Respondent answers that

28  petitioner's claim does not state a federal claim, rather it presents only a state law claim of error,

1  barring relief in these proceedings.  Further, respondent argues that to the degree petitioner's

2  claim asserts a violation of the Sixth Amendment, the state appellate court's determination does

3  not offend federal Supreme Court precedent, precluding relief.   (ECF No. 20 at 13-19.)

4          The last reasoned rejection of petitioner's second claim is the decision of the California

5  Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The state court

6  addressed this claim as follows:

### The Court Did Not Abuse Its Discretion in Denying Defendant's Fourth Marsden Motion

Defendant argues the trial court abused its discretion in denying his fourth motion made pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) "because an irreconcilable conflict between [defendant] and his appointed attorney violated [defendant's] Sixth Amendment right to the effective assistance of counsel."

Here, defendant points to four signs of an irreconcilable conflict: (1) a complete breakdown in communication; (2) a breakdown in trust leading to a breakdown in the attorney-client relationship; (3) the conflict between defendant and his counsel grew toxic; and (4) the conflict gutted his constitutional rights. A review of the complaints underlying the asserted conflicts show the trial court's denial was well within its discretion.

The U.S. Constitution recognizes criminal defendants are entitled to court-appointed counsel if they are unable to employ private counsel. (*People v. Williams* (1970) 2 Cal.3d 894, 904.) However, this is not an unlimited right. The trial court retains discretion whether to allow a defendant to substitute appointed counsel, which need only be granted if "the record clearly shows that the first appointed counsel is not adequately representing the accused." (*Ibid*.) These motions are referred to as *Marsden* motions and will only be overturned on appeal if the defendant shows the trial court abused its discretion because the "'failure to replace counsel would substantially impair the defendant's right to assistance of counsel.'" (*People v. Streeter* (2012) 54 Cal.4th 205, 230.) "Substantial impairment of the right to counsel can occur when the appointed counsel is providing inadequate representation or when 'the defendant and attorney have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.'" (*People v. Clark* (2011) 52 Cal.4th 856, 912 (*Clark*) [citations omitted].)

Notably, dissatisfaction arising from defense counsel's tactical decisions, including investigation and case strategy, does not necessarily require substitution. (See *People v. Dickey* (2005) 35 Cal.4th 884, 922; *People v. Williams, supra*, 2 Cal.3d at pp. 903–906 [disagreement over whether to call certain witnesses did not require appointment of different counsel]; *People v. Robles* (1970) 2 Cal.3d 205, 215 [disagreement over whether defendant should testify was a factor for consideration in the *Marsden* motion].) Nor is substitution

required because of conflict arising from defendant's own behavior or unfounded beliefs regarding counsel's competency. (*Clark, supra*, 52 Cal.4th at p. 918 [defendant cannot refuse to cooperate with otherwise competent counsel and demand substitution]; *People v. Smith* (2003) 30 Cal.4th 581, 606 [acknowledged breakdown caused by defendant's refusal to follow advice or cooperate with counsel]; *People v. Smith* (1993) 6 Cal.4th 684, 688–689, 696–697 [lack of confidence in counsel and not relating to counsel did not warrant substitution].) This is true even where defendant's apparent paranoia has led to impaired communication between client and counsel. (*Clark*, at pp. 913–914 [there is no rule requiring substitution where defendant's paranoia concerning defense counsel has impaired communication].) To the extent there is a credibility determination between defendant's complaints and counsel's statements or explanations at a *Marsden* hearing, the court is entitled to accept defense counsel's explanation. (*People v. Jones* (2003) 29 Cal.4th 1229, 1245; *People v. Webster* (1991) 54 Cal.3d 411, 436.)

Here, defendant requested *Marsden* substitutions on four separate occasions. As noted above, defendant has attacked the trial court's denial of the last *Marsden* motion only, but does so on the basis that review of all four *Marsden* hearings shows "an ongoing and irreconcilable conflict between [defendant] and his appointed attorney." Review of the factual bases for defendant's complaints in all four hearings is necessary to our decision because of the overlap found therein, but we limit our abuse of discretion determination to the trial court's denial of the fourth motion.

## A. **Defendant's First *Marsden* Motion**

During the first *Marsden* hearing held on June 20, 2013, defendant identified the following complaints about his counsel: (1) the lack of communication with counsel; (2) the lack of trust in and by counsel who wanted him to take a deal and would only visit him with a glass barrier between them; (3) defendant's inability to get along with counsel; (4) that counsel was representing him on a number of cases; (5) that counsel had failed to contact potential witnesses; (6) that counsel was working with the DA; and (7) counsel's refusal to request a bail reduction or move for the recusal of a judge in another case.

The trial court asked defendant's attorney about defendant's stated concerns after which defense counsel explained he had extensive criminal experience and had been practicing for over 20 years, that he met with defendant and provided him the written discovery in his cases, that there was no legal basis to seek the recusal of the other judge, that any bail reduction motion would have been frivolous, that defendant had threatened defense counsel causing defense counsel to conduct his visits with defendant on the other side of protective glass, that defense counsel had sent defendant numerous letters in addition to visiting him, that he had refused some of defendant's requests because they would violate ethical duties and/or the law such as providing contact information of potential witnesses, that he had followed up with one of defendant's proposed witnesses and had previously reported the outcome of those investigatory efforts, that

15

he had interviewed another of defendant's proposed witnesses but was not calling her due to problems with her credibility and her lack of importance to the trial, and that he had issued other subpoenas requested by defendant for medical records and police video.

Defense counsel also stated his belief that he had "been more than adequately representing [defendant] in both of his matters, and [was] doing so with the most utmost professionalism." Defendant continued to complain that he did not believe his counsel would fight adequately for him because he had advised defendant to take any deals that were better than life in prison. He also complained that his counsel yelled at him.

Ultimately, the trial court denied the motion, finding that the Court's observation had been that defense counsel competently represented defendant, that any conflict between them appeared to be caused by defendant's own attitude towards his counsel, and that there was good reason to have visits separated by safety glass. Defense counsel's "representation is competent. He's an experienced lawyer, he's a respected lawyer in the Yolo County Courts, and it is clear to me he has and he will continue to competently represent" defendant.

**B. Defendant's Second *Marsden* Motion**

Defendant's second *Marsden* hearing occurred on August 14, 2013. Defendant complained that: (1) counsel was communicating through letters and not communicating daily; (2) he disagreed with counsel's tactics, including whether he should testify; (3) counsel was representing him in more than one matter and had too many cases; (4) counsel failed to keep his family informed of case and medical developments; (5) defense counsel talked to the DA; (6) counsel failed to assist him with his medical issues; and (7) counsel failed to further investigate all the witnesses to the incident giving rise to the charges in the case currently being tried.

In response, defense counsel explained that the conflict arose from defendant's belief that counsel should do exactly what defendant requested, as opposed to defense counsel's duty to do everything he could to represent defendant's best interests. Counsel stated that the conflict was one-sided and being created by defendant's behavior such as threatening counsel, knocking papers on the floor, etc. Defense counsel swore he had been properly advising defendant, including the risks associated with defendant's desire to testify. He confirmed that he had been working to obtain an offer from the DA that did not involve a life term, but had been unsuccessful and that these efforts had upset defendant.

Counsel also said he was working on defendant's behalf with regard to his medical issues and that defendant's medication had been stopped because it was not needed and the jail believed he was either selling the drugs or giving them away to other inmates. Finally, counsel attested to working diligently and after hours in the preparation of defendant's case, which included the preparation of a brief concerning lesser included offenses in an effort to avoid application of the Three Strikes Law.

In denying the second motion, the court found defense counsel's manner of communication reasonable given the circumstances, it reiterated that defense counsel had the right to make tactical decisions, that it was not counsel's job to communicate with defendant's family, and that the court had observed defense counsel advocating for something less than a life sentence, but that these efforts were unsuccessful and the case was headed for trial. The court found defendant had not shown "an irremediable breakdown of the relationship[,]" and defense counsel was competently representing him, by, in part, filing motions in limine and jury instructions.

## C. Defendant's Third *Marsden* Motion

The court held defendant's third *Marsden* hearing on October 7, 2013. Defendant complained that counsel (1) was holding himself out as a qualified psychologist and (2) had allowed him to urinate on himself during the first trial. The trial court explained that defense counsel answered the court's question about whether counsel had a doubt about defendant's competency, which was not counsel acting as a psychologist, but was relevant to whether a competency hearing should be held. Defendant then repeated his previous concern that counsel was representing him on more than one case, which the court explained was normal. Further, defendant complained that he did not like defense counsel and did not know that his attorney would do his best in representing him.

In response, the court noted that it had been unaware of the urgency of defendant's need to immediately use the restroom and that efforts would be made in the future to prevent that from occurring again. The court continued that counsel had done an excellent job representing defendant in the first trial and the preliminary hearing for the second. Defense counsel reiterated that he had been competently representing defendant.

In denying the motion, the court noted "feeling uncomfortable" or believing an attorney was not "acting in his best interest" were not grounds to grant a Marsden motion. It went on noting, "I've observed [defense counsel's] performance in his cases and he has competently represented [defendant]."

## D. Defendant's Fourth *Marsden* Motion

The court held defendant's final *Marsden* hearing on October 8, 2013, wherein defendant complained that he was uncomfortable with his attorney who continued to refuse to abide by his wishes regarding witnesses, giving the example of his refusal to call a witness who had blocked defendant's escape from the holding cell, and but for his blocking the way, the incident with the officers would not have occurred. Defendant again said: "my attorney wishes to use his own tactics and feels that mine are irrelevant at this time." Defense counsel explained that even if the witness testified along the lines explained by defendant, that testimony would hurt, not help the case. Counsel testified defendant was receiving "probably the best representation he could possibly ever receive."

17

1    In denying the motion, the court reiterated that defense counsel has
2    the right to make tactical decisions and any other grounds raised are
     duplicative to the previous *Marsden* motions.

3    It is clear on this record that the trial court acted within its discretion
     in denying defendant's fourth *Marsden* motion. The trial court made
4    numerous well supported findings that defendant had received
     competent representation. Any conflicts arising from defendant's
5    own behavior, including his distrust of counsel and dislike of
     counsel's tactical decisions did not support an irreconcilable conflict.
6    (See, e.g., *Clark, supra*, 52 Cal.4th at pp. 913–914 [no rule requiring
     substitution where defendant's paranoia concerning defense counsel
7    has impaired the representation].)

8    Moreover, we note, defendant's fourth *Marsden* motion was, at its
     essence, duplicative of his first three and we note he does not
9    challenge here the trial court's rulings on his first three motions.

10   There was no error.

11   (People v. Daniels, 2018 WL 1163043 at *3-6; LD 16.)

12                    Analysis

13       To any extent the state appellate court rejected petitioner's claim solely on state law

14   grounds based on petitioner's claim that the trial court abused its discretion, this court is unable to

15   review a state court decision on issues of state law.  As noted above, a writ of habeas corpus is

16   not available for alleged errors in the interpretation or application of state law.  Estelle, 502 U.S.

17   at 67-68.  Thus, the opinion of the Third District Court of Appeal that no violation of state law

18   occurred when the trial court denied petitioner's fourth motion for substitute counsel may not be

19   set aside in this proceeding.

20       With regard to federal constitutional violations, the Sixth Amendment provides that "[i]n

21   all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel

22   for his defense."  U.S. Const. amend. VI.  The Court of Appeals for the Ninth Circuit has held

23   that denial of a motion pursuant to Marsden may implicate the Sixth Amendment right to counsel.

24   Schell v. Witek, 218 F.3d 1017, 1023 (9th Cir. 2000) (en banc); Hudson v. Rushen, 686 F.2d 826,

25   828-29 (9th Cir. 1982).  But the Sixth Amendment is not implicated by every conflict between a

26   defendant and counsel.  See Daniels v. Woodford, 428 F.3d 1181, 1196-97 (9th Cir. 2005), cert.

27   denied, 550 U.S. 968 (2007) (the nature and extent of the conflict must be such as to "depriv[e]

28   ////

                                            18

1  the defendant of representation guaranteed by the Sixth Amendment.").[5]  The Supreme Court has

2  recognized that a defendant is entitled to counsel who "function[s] in the active role of an

3  advocate."  Entsminger v. Iowa, 386 U.S. 748, 751 (1967).  A defendant is entitled to competent

4  counsel.  United States v. Cronic, 466 U.S. 648, 655 (1984).

5          The Sixth Amendment right to counsel also includes a qualified right to retain counsel of

6  choice.  See Schell, 218 F.3d at 1025 (citations omitted).  However, an indigent defendant, while

7  entitled to appointed counsel, is not constitutionally entitled to appointed counsel of choice.

8  Hendricks v. Zenon, 993 F.2d 664, 671 (9th Cir. 1993).  When a criminal defendant requests a

9  substitution of appointed counsel, the trial court is constitutionally required to inquire about the

10  defendant's reasons for wanting a new attorney.  Schell, 218 F.3d at 1025 ("[I]t is well

11  established and clear that the Sixth Amendment requires on the record an appropriate inquiry into

12  the grounds for such a motion, and that the matter be resolved on the merits before the case goes

13  forward.").  However, the Supreme Court has "reject[ed] the claim that the Sixth Amendment

14  guarantees a 'meaningful relationship' between an accused and his counsel."  Morris v. Slappy,

15  461 U.S. 1, 13-14 (1983).  The Ninth Circuit has found that a trial court's refusal to allow

16  substitution of counsel can violate a defendant's Sixth Amendment right to counsel if the

17  defendant and his attorney have an "irreconcilable conflict."  Stenson v. Lambert, 504 F.3d 873,

18  886 (9th Cir. 2007), cert. denied, 555 U.S. 908 (2008).  This level of conflict exists only if

19  communication has so broken down that it prevents the effective assistance of counsel.  Id. at

20  886; Schell, 218 F.3d at 1026.  To determine whether such conflict is "irreconcilable," a court

21  evaluates three factors:  "(1) the extent of the conflict; (2) the adequacy of the inquiry by the trial

22  court; and (3) the timeliness of the motion for substitution of counsel."  See Stenson, 504 F.3d at

23  886; Daniels, 428 F.3d at 1197-98.

24          In this case, as borne out by the record (see LD 9-12) and the state appellate court's

25  accurate recitation thereof, petitioner's constitutional rights were not infringed.  Petitioner was

26

27  [5]  Daniels is a pre-AEDPA case where the appellate court reviewed the state court conclusions *de novo*.  Daniels, 428 F.3d at 1196 & n.24.  In the instant case, this court is required to give

28  deference to the state court findings and conclusions under 28 U.S.C. § 2254(d)(1) and (2).

1    entitled to appointed counsel, not appointed counsel of his choice.  Hendricks v. Zenon, 993 F.2d

2    at 671.  On each occasion of petitioner's request pursuant to Marsden, the trial court held a

3    hearing as required, inquiring into petitioner's reasons for wanting a new attorney.  Schell, 218

4    F.3d at 1025.  The trial court considered petitioner's most recent reasons for wishing to replace

5    defense counsel, including the fact petitioner was "very uncomfortable" with defense counsel and

6    "question[ed] his tactics."  (LD 12 at 2; see also LD 12 at 5.)  Those efforts were careful and

7    probing.  (See, e.g., LD 12 at 2 ["What information would you like to give me?"], 3 ["What

8    details did you provide him that you don't believe he's considering?"], 4 ["What did Officer

9    Frisco do that would be important?"], 5 ["When did you tell Mr. Muller about what you've just

10   told me about Officer Frisco?" & "Other than Officer Frisco, are there other witnesses that were -

11   - that participated in this incident?"], 8 ["is there anything else you'd like to tell me that you have

12   not already told me?"].)  See United States v. Prime, 431 F.3d 1147, 1155 (9th Cir. 2005) (finding

13   inquiry adequate where defendant "was given the opportunity to express whatever concerns he

14   had, and the court inquired as to [defense counsel's] commitment to the case and his perspective

15   on the degree of communication").  Further, defense counsel addressed the court's questions and

16   petitioner's concerns, including the issue of Officer Frisco and counsel's tactics.  (LD 12 at 7-8.)

17   In sum, the trial court thoroughly discussed with petitioner and trial counsel the grounds for his

18   motion to substitute counsel.  (LD 12 at 2-9.)

19       An irreconcilable conflict in violation of the Sixth Amendment occurs only where there is

20   a complete breakdown in communication between the attorney and client, and the breakdown

21   prevents effective assistance of counsel.  Schell, 218 F.3d at 1026.  But disagreements over

22   strategical or tactical decisions do not rise to the level of a complete breakdown in

23   communication.  Id.; see also United States v. McKenna, 327 F.3d 830, 844 (9th Cir. 2003)

24   (holding that dispute over trial tactics "is not a sufficient conflict to warrant substitution of

25   counsel").  While the record here *does* reflect a dispute over tactics, it *does not* reflect a complete

26   breakdown in petitioner's relationship with defense counsel Muller.  Further, petitioner is not

27   entitled to a "'meaningful relationship'" with defense counsel and the record does not establish an

28   irreconcilable conflict despite petitioner's take on the matter.  Morris v. Slappy, 461 U.S. at 13-

20

14.  Petitioner's counsel was competent and actively advocated on his behalf.  <u>Entsminger</u>, 386 U.S. at 751; <u>Cronic</u>, 466 U.S. at 655.

It at least can be said that "'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. at 101.  Petitioner has failed to show that the state court's determination "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." <u>Richter</u>, 562 U.S. at 103.

To conclude, the undersigned finds the state appellate court's determination that no error surrounded the denial of petitioner's fourth <u>Marsden</u> motion was a reasonable one.  It was not contrary to Supreme Court precedent.  Further, the state appellate court's determination of the facts was reasonable.  28 U.S.C. § 2254(d).  Hence, the undersigned recommends petitioner's claim as asserted in ground two of the petition be denied.

*The Question of a Competency Proceeding*

In ground three of his petition, petitioner contends his federal due process rights were violated by the trial court's failure to hold a competency hearing pursuant to section 1368 despite substantial evidence he was unable to rationally assist counsel.  (ECF No. 1 at 5, 31-42.) Respondent contends that to the extent petitioner's claim asserts the trial court failed to follow state procedural law, the claim cannot be heard, and further maintains that the state appellate court's determination was reasonable, precluding the requested relief. (ECF No. 20 at 19-22.)

The last reasoned rejection of petitioner's final claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed this claim as follows:

**The Court Did Not Abuse its Discretion in Refusing to Order a Competency Hearing**

Defendant asserts the trial court erred when it did not order a competency hearing pursuant to section 1368.

Penal Code section 1367, subdivision (a) states in pertinent part:

"A person cannot be tried or adjudged to punishment ... while that person is mentally incompetent. A defendant is mentally incompetent for purposes of this chapter if, as a result of [a] mental disorder or

developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner."

Section 1368 recognizes that if the court doubts the defendant's mental competence, it shall ask defense counsel's opinion on defendant's competency. (§ 1368, subd. (a).)

In the absence of an "expert opinion from a qualified and informed mental health expert, stating under oath and with particularity that the defendant is incompetent ... counsel[, if he doubts defendant's competency,] must make some other substantial showing of incompetence that supplements and supports counsel's own opinion" of incompetency. (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 465 (*Sattiewhite*).) Only upon such a showing "does the trial court have a nondiscretionary obligation to suspend proceedings and hold a competency trial. [Citation.] Otherwise, we give great deference to the trial court's decision not to hold a competency trial." (*Ibid.*)

Notwithstanding counsel's view of the matter, if the court has a doubt about defendant's competency, proceedings are suspended until a determination of competency is made. (§ 1368, subds. (b)–(c).) But, whatever the trial court's view on the question of defendant's competence to stand trial may be, once a defendant has shown "substantial evidence of incompetence to stand trial, due process requires that a full competency hearing be held." (*People v. Stankewitz* (1982) 32 Cal.3d 80, 92 [citing *Pate v. Robinson* (1966) 383 U.S. 375 [15 L.Ed.2d 815] ].) "'Evidence of incompetence may emanate from several sources, including the defendant's demeanor, irrational behavior, and prior mental evaluations.'" (*Sattiewhite, supra*, 59 Cal.4th at p. 464.) "'But to be entitled to "a competency hearing, a defendant must exhibit more than bizarre ... behavior, strange words, or a preexisting psychiatric condition that has little bearing on the question of whether the defendant can assist his defense counsel."'" (*Id.* at pp. 464–465 [citations omitted].)

Here, although defendant had been taken off his medication, was depressed, and unable to focus, the People, in order to protect the record, asked whether the court or defense counsel had any questions about defendant's competency. Defense counsel stated his belief that defendant was competent, and the Court concurred based upon its discussions with defendant. Neither the court nor defense counsel had any doubt as to defendant's competency. Defendant's refusal to work with his attorney, whom he had not been allowed to replace, does not change this analysis. Unlike the *Stankewitz* case, here defense counsel believed defendant was competent and there was no determination by a qualified mental health expert, offered under oath that defendant was not competent. As such, defendant has failed to show substantial evidence of incompetence, and the trial court was within its discretion not to order a competency hearing.

(People v. Daniels, 2018 WL 1163043 at *6-7; LD 16.)

//

1          <u>Applicable Legal Standards</u>

2          "It has long been accepted that a person whose mental condition is such that he lacks the

3   capacity to understand the nature and object of the proceedings against him, to consult with

4   counsel, and to assist in preparing his defense may not be subjected to a trial." <u>Drope v. Missouri</u>,

5   420 U.S. 162, 171 (1975).   In some instances, there comes a time where a defendant's behavior

6   displays such marked indicia of incompetence that the trial court violates due process by not *sua*

7   *sponte* suspending proceedings and conducting a hearing into the defendant's competency to

8   stand trial.  <u>See, e.g.</u>, <u>Drope</u>, 420 U.S. at 180; <u>Pate v. Robinson</u>, 383 U.S. 375, 385 (1966); <u>de</u>

9   <u>Kaplany v. Enomoto</u>, 540 F.2d 975, 979-81 (9th Cir. 1976).  "[E]vidence of a defendant's

10  irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand

11  trial are all relevant in determining whether further inquiry is required, but that even one of those

12  factors standing alone may, in some circumstances, be sufficient."  <u>Drope</u>, 420 U.S. at 180.

13         The trial or conviction of a person who is legally incompetent is a substantive due process

14  violation.  <u>Cooper v. Oklahoma</u>, 517 U.S. 348, 354 (1996); <u>see also</u> <u>Maxwell v. Roe</u>, 606 F.3d

15  561, 568 (9th Cir. 2010) (quoting <u>Robinson,</u> 383 U.S. at 378) ("It is undisputed that 'the

16  conviction of an accused person while he is legally incompetent violates due process'").

17  "[D]efense counsel will often have the best-informed view of the defendant's ability to participate

18  in his defense."  <u>Medina v. California</u>, 505 U.S. 437, 450 (1992).

19          <u>Analysis</u>

20         A review of the record reveals there has been no due process violation, that the state court

21  determination was a reasonable application of clearly established federal law, and further, that its

22  decision was based on a reasonable determination of the facts.  28 U.S.C. § 2254(d).

23         On October 7, 2013, petitioner expressed a desire to not be present for jury selection,

24  waiving various rights as explained by the trial court, and expressing his reasons for wishing to be

25  absent from the proceeding.  (LD 5 at 65-68.)  The trial court granted petitioner's request.  (LD 5

26  at 69.)  Following a discussion at the bench, the prosecutor noted for the record his concern as to

27  petitioner's competency.  (LD 5 at 69.)  The following exchange then occurred:

28         THE COURT:  Mr. Muller, do you have any comments on that issue?

1  MR. MULLER:  No, your Honor, other than I do not believe that Mr.
2  Daniels is 1368 at this point in time.  That's based on materials that
   I obtained during the course of my representation of Mr. Daniels that
   I cannot disclose at this time.
3
   [PROSECUTOR]:  Okay.
4
5  THE COURT: I'm satisfied with my discussion with [petitioner] that
   the Court is not declaring a doubt either.
6
   [PROSECUTOR]: I just want to make sure this is all on the record.
7
   (LD 5 at 69-70.)  Then, as the court was pausing proceedings for a fifteen-minute recess,
8
   petitioner made his fourth <u>Marsden</u> motion; the court indicated it would hear the motion after the
9
   break.  (LD 5 at 71.)  Upon return, the confidential hearing was held in accordance with
10
   petitioner's request.  (LD 11.)
11
        More particularly, when the trial court asked petitioner to "tell [the court] what your
12
   complaints are today" (LD 11 at 2), petitioner complained that his defense attorney was "not a
13
   psychologist," was not "acting within [his] best interest," and "fails to realize" or "accommodate"
14
   his issues, referring to his physical health.  (LD 11 at 2-3.)  When the trial court inquired of
15
   petitioner whether he was referring to Mr. Muller's "statement to the Court about whether he
16
   thought you were - - had a doubt about your competence" (LD 11 at 3), petitioner stated: "that's
17
   not his decision to make," and that it was a decision for a doctor.  (LD 11 at 3.)  The court
18
   thereafter explained the process associated with section 1368, including the following exchange:
19
   THE COURT: So I asked Mr. Muller [whether he had a doubt as to
20 competency], and he stated his opinion that he - - his opinion was he
   did not have a doubt. He did not believe you should be evaluated for
21 your competence.  And my conclusion was the same based upon
   talking with you this morning.
22
   I'm not a psychologist, I don't claim to be a psychologist, but - - and
23 it's not that common where the Court exercises that right to declare
   doubt if they think there is a doubt.  But that's how the process works.
24
   You may view - - you asked some questions about how he can
25 represent you on three cases. Can you tell me a little bit more about
   - - are you - - I'm not sure what you mean by that, because usually -
26 -
27 DEFENDANT: Hold up.  Don't - - go back.  Go back, go back, go
   back.  Stop right there.
28
   THE COURT:  Okay.

1    DEFENDANT:  Go back.  This doubt thing, I'm lost real quick.
     What did he have a doubt for?

2

3    THE COURT:  He was not declaring a doubt.  He's not asking the
     Court to have you evaluated to see if you're competent or not.

4    DEFENDANT: What does that mean again?  Tell me, because I told
     you I'm having issues.  Explain it slowly.

5

6    THE COURT:  Okay.  If a person is not mentally competent, their
     criminal case stops and they get mental health treatment.

7    DEFENDANT:  So that was what he had the doubt for?

8    THE COURT:  He didn't - - he said he didn't have - - he said he did
     not have a doubt.

9

10   DEFENDANT:  Okay.  So when he does not have a doubt, that
     means he's not recommending?

11   THE COURT:  Correct.  He's not requesting that you be evaluated
     to determine whether you are competent or not.  He is not asking the

12   Court to have you evaluated as to your competence to participate in
     this case at this time.  [¶]  You follow me?

13

     DEFENDANT:  So you're saying that the case that I'm on right now
14   - -

15   THE COURT:  Right.

16   DEFENDANT:  - - the one I'm on trial for - -

17   THE COURT:  Right.

18   DEFENDANT:  - - he doesn't have a doubt of my competency for
     this part?

19

     THE COURT:  Correct.  By not declaring a doubt, he believes you
20   understand what's going on - - what the charges are, you understand
     that you're here for a trial, you understand you have certain rights

21   that go along with the trial, that you can participate.  He believes you
     understand those things by not declaring a doubt.

22

     DEFENDANT:  Okay.  And that's - - this - - what about the other
23   two cases?

24   THE COURT:  Well, we're not here on those cases.

25   DEFENDANT:  Okay.  Well, this one case - - all right.  Okay.  Now
     I'm up to date.

26

27   (LD 11 at 5-7.)

28   //

                                    25

1        Following a further exchange wherein petitioner used profanity in the courtroom as the

2 trial court considered his latest motion (LD 11 at 8-12), defense counsel Muller commented as

3 follows:

> MR. MULLER:  Only that I have, during the course of my representation, obtained Mr. Daniels' medical as well as psychological records while he's been incarcerated at the Yolo County Jail. It is true that his psychiatric medication terminated in I believe December of 2012.
>
> The reason for the discontinuance is that there was a report Mr. Daniels was selling or providing his medication to other inmates. And further, the psychologist, upon reviewing these reports, indicated that it appears Mr. Daniels suffers from a what's called Access 2B Cluster personality disorder where medication will not have any effect on Mr. Daniels.
>
> This has to deal solely with the personality disorder and not one that's considered a chemical imbalance which medications would be - - have any efficacy.

13 (LD 11 at 12.)  Thereafter, the court denied petitioner's motion.  (LD 11 at 13.)

14        In short, the record reveals the state appellate court's determination that there was not

15 substantial evidence of incompetence was neither contrary to, nor an unreasonable application of,

16 federal precedent.

17        The trial court considered the relevant information.  Drope, 420 U.S. at 180.  And Mr.

18 Muller's views, particularly in conjunction with petitioner's comments, questions and actions on

19 record, amount to the best informed view of petitioner's ability to participate in his defense.

20 Medina, 505 U.S. at 450.  Simply put, the undersigned's review of the record finds ample support

21 for the state appellate court's decision.  Further, "'fairminded jurists could disagree' on the

22 correctness of the state court's decision." Harrington v. Richter, 562 U.S. at 101.  Petitioner has

23 failed to show that the state court's determination "was so lacking in justification that there was

24 an error well understood and comprehended in existing law beyond any possibility for fair-

25 minded disagreement." Richter, 562 U.S. at 103.  Accordingly, the undersigned recommends the

26 claim be denied.

27 //

28 //

VI.  <u>Conclusion</u>

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

Dated:  October 6, 2020

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

dani2409.157

27